[No. 20672.   Department One.   September 13, 1927.]

MYRTLE M. CHALENOR, *Appellant*, v. MUTUAL LIFE
INSURANCE COMPANY OF NEW YORK
*et al., Respondents.*[1]

[i] INSURANCE (128, 185) — ACCIDENTAL DEATH — EVIDENCE — SUF-
FICIENCY. In view of the presumption, in case of doubt, that
a death was caused by accident rather than by suicide, it is
error to grant judgment n. o. v., and the jury was warranted
in finding that the death of a national guardsman, on duty
at camp, was accidental, where it appears that, after rifle
practice the day before, the guns may have been put away
without inspection and loaded, and the next morning deceased
was shot, and his body found on his bed, one hand grasping
the muzzle of his gun, it being shown that he had no financial
troubles and that his home life was happy.

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered May 22, 1926, in
favor of the defendants, notwithstanding a verdict in
favor of the plaintiff in an action upon a policy of life
insurance. Reversed.

*Lund & Dodds,* for appellant.

*Chadwick, McMicken, Ramsey & Rupp, S. F. Chad-
wick, Garrecht & Twohy,* and *Williams & Cornelius,*
for respondents.

FRENCH, J.—This action was instituted by the appel-
lant, Myrtle M. Chalenor, on three insurance policies
which had been issued by the respondent companies,
covering the life of Richard Chalenor, her son. She is
the beneficiary named in each of the policies, and the
cases were consolidated for trial.

The controlling question is, was death the result of
accident or suicide. The trial court instructed that
this was the only essential issue to be determined by

[1]Reported in 259 Pac. 383.

the jury, and there was no exception taken to this instruction. By its verdict, the jury found the death of Richard Chalenor to be accidental. Motion for judgment *non obstante veredicto* and for new trial was made, and the motion for judgment *non obstante veredicto* being granted, this appeal follows.

[1] The question for this court to determine is, was there substantial evidence to support the verdict of the jury? The stories, as told by the various witnesses, were, in many particulars, somewhat conflicting, but the jury, being the judges of the credibility of the witnesses and of the weight to be given their testimony, was entitled to believe about the following facts, all of which are supported by some direct testimony. The insured, Richard Chalenor, was serving as a private in the National Guard near American Lake, and met his death by gunshot wound June 30, 1925. He was, at the time of his death, nineteen years of age, and had been in camp about one week. His companions had observed him as apparently normal, inclined to be quiet rather than boisterous. One witness described him as "alert, cheerful and polite." He lived at his home in Spokane with his parents and a younger sister. Older brothers and sisters were married and living in the same city. The family were all members of the Episcopal church and attended regularly. He was a young man of exemplary habits, was not troubled by financial difficulties. His home life was happy. He was devoted to his family, particularly to his mother. This was the first National Guard encampment he had ever attended, and the regulations prescribed for those in attendance were new to him.

Prior to the day of his death, he, with others of his company, had been engaged in target practice, and there is testimony that the customary inspection of rifles did not take place that evening, and a

number of the boys are uncertain whether or not the guns were cleaned that night before being put away under the cots where the boys slept. There is also testimony that occasionally loaded shells are found in guns after target practice and are sometimes accidentally discharged.

Richard, with four or five companions, occupied a tent, and shortly before 5:30 in the morning of June 30, 1925, a rifle shot was heard in his tent. One of the members of his company was standing immediately in front of the tent and he at once stepped in, and, observing what had happened, called to the corporal of the guard. The other men in the tent were all asleep at the time of the shot and were awakened either by the rifle shot or by the calling of the guard. The deceased was on his bunk, partially dressed, lying on his stomach, his left arm under his head, the barrel of his rifle near the muzzle clasped in his left hand, the right hand hanging over the side of his cot. A bullet had entered his right temple and passed through his head, coming out and going through the tent some thirty inches above the level of the cot. No powder burns were observed, and death was practically instantaneous.

We have read with care the cases cited by counsel, and the rule is that judgment *non obstante veredicto* can only be granted where the court can say that there is no evidence or reasonable inference therefrom to support the verdict. *Puget Sound Elec. R. v. Carstens Packing Co.,* 76 Wash. 364, 136 Pac. 117; *Washington Trust Co. v. Keyes,* 88 Wash. 287, 152 Pac. 1029; *Reynolds v. Morgan,* 134 Wash. 358, 235 Pac. 800. The rule also is:

"Where, however, it is apparent that the injury to or death of the insured was the result of external and violent means, and the issue is as to whether it was due

to an accident, within the meaning of the policy, or to some cause excepted by the policy, the presumption is in favor of accident and against the existence of facts bringing the case within any of the exceptions of the policy, such as . . . suicide." 1 C. J. 495, § 278.

The same rule, stated a little differently:

"Where it is doubtful from the evidence that death was caused by an accident or by suicide, a presumption arises that an accident, and not suicide, was the cause of the death." 14 R. C. L., § 416, p. 1236.

Practically all of the cases we have examined sustain the foregoing rules.

The facts above detailed as the facts in this case certainly do not overcome the presumption against suicide. The contrary facts disclosed by the record were clearly for the jury.

Judgment reversed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.